LYKINS OIL COMPANY, D.B.A. LYKINS
SALES & SERVICE *v.* FEKKOS.

(No. 85-CV-0799—Decided
July 10, 1986.)

Court of Common Pleas of
Clermont County.

*Brian J. Halligan,* for plaintiff.
*Gary Ostendarp,* for defendant.

WATSON, J. The facts of this matter are not in dispute. On April 20, 1985, defendant, Haralambos Fekkos, purchased from plaintiff, Lykins Oil Company, d.b.a. Lykins Sales & Service, a Yammar Model 165D, 16 horsepower diesel tractor and various implements. The price of these less trade-in was $6,596.

On Saturday, April 27, 1985, defendant issued his personal check for that amount, and the items were delivered to defendant's residence. On Sunday, April 28, 1985, the defendant, when attempting to use the tractor for the first time, discovered it to be defective. Defects included a dead battery requiring jump starts, overheating while pulling either the mower or tiller, missing safety shields over the muffler and the power takeoff, and a missing water pump.

On Monday morning, April 29, 1985, defendant telephoned the service manager, Don Girty, who told defendant to contact the sales representative, Harris Kirby, after 4:30 p.m. Defendant then called his bank to stop payment on the check he had written to plaintiff. On Monday afternoon, defendant went to the plaintiff's store and spoke with the manager, service manager and sales representative. Girty and Gutjahr, the store manager, told defendant they believed his claims to be true and told him they would have the tractor picked up from defendant's residence the next day, Tuesday, April 30. Plaintiff disputed this as the pickup date and maintained that the managers said it would be picked up in the next few days. This is the only disputed fact.

Defendant placed the tractor with the tiller attached in his front yard at the edge of the lawn as near as possible to the front door without driving it into the landscaped area closest to the house. Defendant left the tractor on the lawn because his driveway was broken up for renovation and the garage was inaccessible, and because the tractor would have to be jump started by plaintiff's employees when they picked it up.

No pickup was made on April 30.

Also, on April 30, defendant went back to the plaintiff's store to discuss defendant's purchase of an Allis-Chalmers tractor. An employee of plaintiff made the notation "cancelled 4-30-85" on the Yammar sales invoice of April 20. Defendant told plaintiff's employees at that time that the Yammar tractor still had not been picked up, and remained on his lawn.

On Wednesday, May 1, 1985, at 6:00 a.m. defendant discovered that the tractor was missing although the tiller had been unhitched and was still in the yard. Defendant telephoned the police to report the incident and suggested they check with plaintiff to see if it had picked it up as had been arranged. Defen-

dant was later told by the manager, Kirby, that plaintiff's insurance carrier would take care of it as it was plaintiff's responsibility.

On the evening of May 1, plaintiff picked up the remaining attachments which were not stolen. On May 11, 1985, these items plus the Allis-Chalmers tractor were delivered to defendant. Defendant received his first check for $6,596 from plaintiff and he issued a new check for the Allis-Chalmers tractor.

According to the sales brochure, the Yammar tractor weighed 1229.8 pounds. When stolen, it also had weights attached to it. It required a key to start and because of the dead battery would have required a jump start.

On May 13, 1985, and again on June 22, 1985, Kirby assured defendant that it was plaintiff's fault for not promptly picking up the tractor as agreed and that defendant had nothing to worry about.

The parties' motions for summary judgment came on to be heard by this court on June 24, 1986.

Plaintiff argues in support of its motion for summary judgment that R.C. 1302.61 applies to this matter.

Subsections (B)(1) and (2) provide that:

"Subject to the provisions of section 1302.62 of the Revised Code:

"(1) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

"(2) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of division (C) of section 1302.85 of the Revised Code, he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them."

Plaintiff argues that because defendant was already in possession of the tractor at the time he rejected it, he had the duty to hold it with reasonable care for a sufficient length of time for plaintiff to remove it from defendant's premises. Plaintiff asserts that defendant breached this duty and is liable to plaintiff because the tractor was unavailable to be picked up by plaintiff on May 1, the day after the purchase order was cancelled and two days after defendant rejected the tractor.

On the other hand, defendant, in support of his motion for summary judgment, argues that R.C. 1302.54 controls the matter. R.C. 1302.54(A) provides:

"Where a tender or delivery of goods so fails to conform to the contract as to give a right of rejection the risk of their loss remains on the seller until cure or acceptance."

Defendant argues that because the tractor was of no use to him as delivered, it failed to conform to the contract so as to give him the right to reject it. Thus, defendant asserts, under R.C. 1302.54 the risk of loss remained on the seller at the point of the tractor's theft on May 1, 1985, because no cure or acceptance had been made at that point.

Alternatively, defendant argues that if R.C. 1302.61 is applicable to the case, he still is entitled to summary judgment because subsequent to his rejection he held the tractor with reasonable care, forced because of the necessity of jump starting, the impassibility of his driveway and inaccessibility of his garage. Defendant states that he left the tractor on the front lawn, as near as possible to the house without driving it onto the landscaping. Defendant argues that it would be unreasonable to assume that he could have anticipated that someone would "go to the trouble of removing the tiller, and then push or winch a 1,200-plus pound tractor onto a truck or drag or whatever."

The court in its research of Ohio sales law discovered no Ohio case law on the precise issue presented in this case. Indeed there is little case law nation-

wide on this issue. However, the court sees no reason that the two aforementioned statutes are not to be read *in pari materia* to provide the law to be applied. Regarding UCC 2-510(1) and (2) (R.C. 1302.54[A] and [B]), when a buyer rightfully *revokes* acceptance and then causes the loss or destruction of goods, the liability for loss can be placed upon him, not as a result of risk allocation but as a consequence of his failure to exercise reasonable care as to the rightfully rejected goods.

The court is mindful that this passage refers to revocation of acceptance rather than rejection prior to acceptance, but the court would note that the rationale as to rejection is similar. Thus, where a buyer has taken possession of goods prior to rejection, the goods so nonconforming that the right to reject them arises, the risk of loss remains on the seller unless through the buyer's negligence they are lost, stolen, or destroyed. The actual risk of loss never actually shifts, but liability of the buyer arises upon his failure to exercise reasonable care for the goods' preservation until such time as the seller removes the goods rightfully rejected.

The case which best illustrates the application of this principle is *Graybar Electric Co.* v. *Shook* (1972), 17 N.C. App. 81, 193 S.E. 2d 392, affirmed (1973), 283 N.C. 213, 195 S.E. 2d 514. In *Graybar,* the buyer ordered three reels of burial cable, but by the seller's mistake was sent two reels of aerial and one of burial. Buyer rejected the two reels that were nonconforming and at seller's request attempted to have them shipped back to seller, but was unable to do so because of a trucking strike. After advising seller of his inability to return the reels, buyer stored them at his construction site, but within several months they were stolen. The court held that the trial court correctly concluded that buyer rejected and so notified seller within a reasonable time; that buyer held the reels with reasonable care for time sufficient for seller to remove them; that buyer had no further obligation with regard to the reels; and that seller had sufficient notice and opportunity to take necessary steps to protect its property, which it did not do.

As to the instant case, while it may be said that the seller retained the risk of loss of the nonconforming tractor, the liability for loss would fall on the buyer, defendant, if the facts show that the buyer breached his duty to hold the tractor with reasonable care for sufficient time for removal, after notification of rejection to seller.

The court finds that the single disputed fact — whether plaintiff said it would pick up the tractor in a few days or whether it would pick up the tractor the next day after rejection — is not a material fact for the purposes of the merits of the matter. On the facts, the court finds that the actions taken by defendant were reasonable under all the circumstances and that defendant did not breach his duty to use reasonable care to hold the tractor until plaintiff would retrieve it. The court notes that there is no evidence whatsoever that any of plaintiff's employees indicated their dissatisfaction with defendant's decision to park the tractor on his front lawn when told by defendant that that was where he would leave it until they came. The evidence shows to this court's satisfaction that defendant acted reasonably because of the inaccessibility of his garage on account of the demolition of his driveway.

Accordingly, reasonable minds could only conclude that defendant took reasonable care to hold the tractor. Defendant is entitled to judgment as a matter of law, and the motion for summary judgment is well-taken and granted in his favor. The motion by plaintiff is not well-taken and is overruled.

*Judgment accordingly.*